[Filed April 23, 1888.]

# WILLIAM COLVIG, RESPONDENT, *v.* COUNTY OF KLAMATH, APPELLANT.

DISTRICT ATTORNEY — FEES OF — ALLOWANCE OF, BY CIRCUIT COURT. — It is the duty of the respective Circuit Courts at each term thereof to ascertain the fees to which the district attorney is entitled for the term, and direct an order to be entered upon the journal that the same be paid.

BAIL BOND — FORFEITURE OF — PAYMENT BY SURETIES — DISTRICT ATTORNEY — FEES FOR COLLECTING — WHEN ALLOWED. — Where a defendant in a criminal action, who had been admitted to bail, failed without sufficient excuse to appear for arraignment, and the undertaking of bail was declared forfeited, and the sureties therein consented that judgment for the amount thereof be rendered against them at the time the forfeiture was declared, and they paid the amount to the district attorney, who paid it over to the treasurer of the county entitled thereto, and filed a receipt therefor with the county clerk of the county; *held,* that it was not error for the Circuit Court in ascertaining the fees to which the district attorney was entitled for the term, to allow him ten per centum on such amount so received and paid over.

ORDER OF COURT, APPEALABLE — WHAT IS. — *Semble,* per THAYER, J. — An appeal to this court from an order in such case is not provided for in the Code. Such order is not an order affecting a substantial right, and which in effect determines an action or suit so as to prevent a judgment or decree therein, or a final order affecting a substantial right, and made in a proceeding after judgment or decree. (Per LORD, C. J., concurring.)

BAIL BOND — RECOGNIZANCE — WHAT IS. — Under the Code a bail bond in criminal cases is designed to serve the same purpose, and is in effect like a recognizance at common law. A recognizance is an obligation of record entered into before a court or officer duly authorized for that purpose, with a condition to do some act required by law which is therein specified. When forfeited it is made absolute, and some of the authorities indicate that it has the force and effect of a judgment.

APPEAL from Klamath County. Affirmed.

*William M. Colvig,* and *P. P. Prim,* for Respondent.

*H. K. Hanna,* and *E. B. Watson,* for Appellant.

THAYER, J. — This appeal is from an allowance for fees made by the Circuit Court for the county of Klamath, in favor of the respondent, for services as district attorney of the First Judicial District of the State, performed at the June term, 1887, of said court. It appears that the respondent, as such district attorney, attended said term of court, and at which an indictment was found by the grand jury of said county against one F. Muny, for the crime of murder in the first degree. Muny had pre-

viously been held to answer for said crime, and had given bail for his appearance at said term of court in the sum of six thousand dollars. That his arraignment was set for the fifteenth day of June, 1887, and upon his failure to appear in accordance therewith, his bail was declared forfeited to the State of Oregon, and the court adjudged that the State of Oregon have and recover of and from such sureties the said sum of six thousand dollars, and that the same be collected as by law in such case made and provided. That respondent subsequently collected from such sureties said sum of six thousand dollars, which he paid over to the county treasurer of the county of Klamath, took said treasurer's receipt therefor, and filed it with the county clerk of said county, whereupon the sureties were released from said bond, and the same was entered of record. That thereafter, and on the seventeenth day of June, 1887, the said Circuit Court, after ascertaining the amount of fees which it deemed the respondent entitled to for his services as district attorney earned at said term, allowed him, among other items, a fee of ten per cent on the said six thousand dollars so collected and paid over to said treasurer, amounting to six hundred dollars, and directed and caused an order to be entered upon the journal of the said court that the same be paid to him, which is the order appealed from herein.

The statute provides that at each term of the court it shall ascertain the fees to which the district attorney is entitled for the term, and direct an order to be entered upon the journal that the same be paid, and that upon presentation of a certified copy of such order to the proper officer of the State or county, it shall be his duty to draw his warrant upon the treasurer of the State or county for the amount, etc. (Code of 1887, § 1074.)

The county of Klamath, being affected by the order of allowance made by the Circuit Court, its counsel claims the right to appeal therefrom to this court, and insists that it is only in civil actions for the recovery of fines, penalties, and forfeitures, that such allowances can be made to the district attorney, and cites subdivision 4 of section 1073 of the Code of 1887, as proof of his proposition. The respondent's counsel contends that an

appeal to this court will not lie in such a case; that the Circuit Court had jurisdiction of the matter, and that it will be presumed that the evidence before it justified the allowance made.

The power of the Circuit Court in that particular is derived wholly from statute. It is a similar power to that exercised by an auditing board. The legislature could doubtless have given this court jurisdiction to review decisions of the Circuit Court made in such cases; but in the absence of any provision to that effect, it certainly would have no such authority any more than we would have authority to review the action of any other auditing officer by appeal.

A writ of review, as it is termed under the Code, may be resorted to in certain cases where an appeal will not lie; but it was certainly not intended that such a writ should issue out of the Circuit Court to review its own decisions, though such a practice has been followed under similar circumstances, and maintained by able jurists. Judge Bronson always insisted that conferring a mere statutory power upon a court had the effect to render it, *pro hac vice,* a subordinate tribunal of special and limited jurisdiction; that it did not exercise the power as a court, and that a practice of allowing a *certiorari,* as a court, to remove their own proceedings as commissioners, was regular and appropriate, and showed in his dissenting opinion in *Striker* v. *Kelly,* 7 Hill, 9, that such practice had long prevailed; but the majority of the court in that case maintained the contrary view.

The Code of this State provides for an appeal to this court, from an order affecting a substantial right, and which in effect determines the action or suit so as to prevent a judgment or decree therein, or a final order affecting a substantial right, and made in a proceeding after judgment or decree. (Code of 1887, § 535.) This is the only provision of the statute which has any bearing upon the question, and the right to appeal in this case depends upon the construction to be given it. The order attempted to be appealed from is not an order which in effect determines any action or suit, so as to prevent a judgment or decree therein. It must, therefore, in order to be appealable, come under the head of "a final order affecting a substantial

right, and made in a proceeding after judgment or decree." But such kind of order evidently must be one made in a proceeding in which a judgment or decree has been rendered, and affect the substantial rights of a party thereto. I do not see how any other construction of the latter clause of the provision referred to can be given. It can hardly be claimed that the decision of a matter which relates to the administrative department of the government should be regarded as such an order.

It is the practice of many of the Circuit Courts of the State to allow a counsel, appointed to defend persons charged with crime, a fee, which is chargeable to the county in which the trial is had; and if an appeal lies in this case, I do not see why it would not lie from such an allowance. The order making the allowance is in a proceeding, it is true, but it is not in a proceeding in which a judgment or decree has been rendered. We have considered the merits of the question involved in the appeal, and have concluded that the allowance of the ten per centum upon the amount of money collected by the respondent and paid over to the treasurer, under the circumstances of the case, was just and proper. The recovery of the money was not by means of a civil action, it is true, but was as effectually accomplished through the mode pursued by the respondent. The judgment entered against the sureties upon the forfeiture of their undertaking was doubtless consented to upon their part; it could not otherwise have been properly so obtained, and it is to be presumed that the respondent induced the sureties to adopt that course, through which he achieved as complete success and as beneficial a result as could have been secured by means of a civil action.

It would be very inequitable, indeed, for the county, after having received the money through the agency and management of the respondent, to avoid the payment of the per centum by means of a slight technicality. The county realized the benefit of the forfeiture in full; every dollar went immediately into its treasury, and because it was secured so promptly and apparently with so little effort on the part of the respondent, it does not follow that he is any the less entitled to his per centum than he would be if the county had been deprived of its use until the

end of an expensive and protracted litigation. The county had no way of collecting the money except through the respondent. He was authorized, and it was his duty as district attorney to proceed by action against the bail upon their undertaking. (Code of 1887, § 1493.) That is the only way since the adoption of the Code in which they could be proceeded against.

The remedy by *scire facias* has been superseded; but their liability was effectually established when the forfeiture was declared, and they had the right to waive the privilege of being sued in an action at law, and to confess judgment; and when they chose to adopt that course and to pay the amount of their liability, the county, which is not required to pay anything except a percentage on what it actually receives, should not, because of the strict letter of the statute, be allowed to object to the respondent's receiving his fees. Such a construction of the law would operate unjustly.

This view of the merits of the case renders it unnecessary to determine the question as to the rights to the appeal. The decision of the Circuit Court will be affirmed.

LORD, C. J., concurring.—Under the Code, a bail bond in criminal cases is designed to serve the same purpose, and is in purport and effect like a recognizance at common law. A recognizance is defined to be an obligation of record entered into before a court or officer duly authorized for that purpose, with a condition to do some act required by law which is therein specified. (2 Blackst. Com. 341; 1 Chitty Crim. Law, 90.) When forfeited it is made absolute, and some of the authorities indicate that it has the force and effect of a judgment. (4 Blackst. Com. 452.)

"A recognizance," said McKean, C. J., "is a matter of record; it is in the nature of a judgment, and the process upon it, whether a *scire facias* or summons, is for the purpose of carrying it into execution, and is rather judicial than original; it is no further to be reckoned an original suit than that the defendant has a right to plead to it; it is founded upon the recognizance, and must be considered as flowing from it and partaking of its nature;

and when final judgment is given, the whole is to be taken as one record." (*Respublica* v. *Cobbett,* 3 Dall. 475.) Sutherland, J., said: "A recognizance is an acknowledgment of a debt of record; it has many of the attributes of a judgment." (*People* v. *Van Eps,* 4 Wend. 392.) "The recognizance being a matter of record is held to be rather of the nature of a judgment than a contract, and for this reason it is that the most usual proceeding against the cognizor for breach of condition is by *scire facias,* and it is said that an execution may issue on such *scire facias."* (*State* v. *Walker,* 56 N. H. 178; *Shultze* v. *State,* 43 Md. 306.) From all this it appears that a recognizance is considered as a judgment, being an obligation solemnly acknowledged and entered of record; and that when a default is made and a forfeiture taken, a *scire facias* may be issued upon it requiring the cognizor to show cause why the plaintiff shall not have the advantage of that record, that is, why execution shall not issue for the sum named in the recognizance.

An undertaking of bail in criminal cases under the Code is in definition and purpose a recognizance. It is an undertaking entered before a competent court or magistrate by the persons who engage as sureties for a defendant, that he will appear according to the conditions of the undertaking, or in default thereof, that they will pay a specified sum. (Code, §§ 1457, 1482.) It is thus an obligation acknowledged and entered of record, and when made absolute by forfeiture judicially declared by reason of a default, or failure to appear according to its terms, it partakes more of the nature of a judgment than a contract, and is in principle and effect the same as a recognizance at common law. Nor is there any other difference in principle, nor in the enforcement of the one or the other, only as the Code practice has abolished the remedies as technically known at common law. Instead of the writ of *scire facias,* a remedy unknown to our practice, the Code provides that the district attorney may, etc., proceed by action against the bail upon their undertaking. But in either case, whether *scire facias* is issued or an action begun, the object is for the purpose of carrying the forfeited recognizance or undertaking into execution and effect. The law makes

it the duty of the district attorney to prosecute for and collect all fines and forfeitures. He must prosecute for them whenever that course is essential to secure their collection. Whether he shall proceed by that method or employ some other must necessarily depend upon circumstances and be left largely to his discretion.

In the present case, when the default occurred and the forfeiture was taken, the record was put into that shape or condition, that when the term adjourned it became a matter for the exercise of his official discretion as to the course he should pursue for its enforcement and collection. The debt was solemnly acknowledged of record, which at common law was in the nature of or considered as a judgment, and which from its similarity under the Code must partake of some of its attributes. It is true an execution could not have issued for its enforcement, and yet in this incipient stage it was in the nature of a judgment and could only be satisfied of record. After reciting the facts of default, the record reads that "it was ordered and adjudged by the court that the said undertaking of the defendant is hereby forfeited, and that the State of Oregon do have and recover of and from the said sureties, etc., the said sum of six thousand dollars," etc. Considered as such, it not only represented in form, but was in the nature of a judgment on the civil side, and money collected or recovered from the sureties by the district attorney under it, and applied in satisfaction of such record, released them and entitled him to compensation for his services as much as if he had prosecuted it by action to final judgment. (*Respublica* v. *Cobbett, supra.*)

In this view, the objection urged is obviated, and as the equity of the case is undisputed, the judgment may be upheld.